UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIRK HENDEN #652050,

Plaintiff,

v.

L. MILLER, et al.,

Defendants.
______________________________/

Case No. 2:22-cv-00095

Hon. Robert J. Jonker
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Lewis's motion for summary judgment and to dismiss. (ECF No. 61.)

State Prisoner Kirk Henden filed an unverified complaint alleging that, due to emotional distresss, he covered his observation cell with his own feces and that Defendants made him stay in the contaminated cell. These allegations relate to Henden's confinement at the Baraga Correctional Facility (AMF). (ECF No. 1.) Henden filed his complaint under 42 U.S.C. § 1983. (*Id.*) Henden sued Resident Unit Manager (RUM) Miller, Assistant Resident Unit Supervisor (ARUS) Niemi, and Nurse Practitioner (NP) Lewis. On April 19, 2023, this Court dismissed RUM Miller and ARUS Niemi because Henden failed to properly exhaust his administrative remedies. (ECF No. 29.)

NP Lewis is the remaining Defendant. She moves for dismissal because Henden failed to exhaust his administrative remedies with respect to his claims against her. She also argues that she did not deny Henden medical care in violation of the Eighth Amendment.[1] In the opinion of the undersigned, Henden failed to exhaust his administrative remedies. In addition, the undersigned concludes that there exists no genuine issue of material fact that could support Henden's Eighth Amendment claims that he was denied medical care in deliberate indifference to a serious medical need. It is respectfully recommended that the Court grant Defendant's motion for summary judgment and dismiss this case.

**II. Motion Standard**

Defendant NP Lewis moves for summary judgment and to dismiss due to Plaintiff's failure to participate in discovery. The Court addresses NP Lewis's motion for summary judgment. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is

---

1 This R&R will not address NP Lewis's argument that dismissal of the complaint is appropriate based upon Henden's refusal to answer questions during his deposition. In general, the Court does not impose such a harsh sanction without first providing a warning that dismissal of the complaint is a possibility for refusing to participate in discovery. *Wittman v. Wilson*, 95 F. App'x 752, 754 (6th Cir. 2004).

2 The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir.

so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III. Exhaustion of Administrative Remedies**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."

2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted

oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir.

2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

Previously, the Court determined that the one grievance that Henden filed on the issue he presents in his complaint was not properly exhausted. Henden's Step I grievance stated:

Date Received at Step I 2/8/22 Grievance Identifier: ICF 22 02 0152 28

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Kirk Henden | 652050 | Icf | 1-3 | 8-4,-21 | 2-4,-22 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 9-9,-21
If none, explain why. I wasen't provided proper assistances to present grievance in a timely ~~matter~~ and respectable matter and due to being on quarantine status

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

"I was placed in an observation cell which were cover with feces ~~and~~ [illegible] For approx. 40 days and violate ~~inhumane~~ Policies of humane treatment"

(ECF No. 61-4, PageID.420.)

The Court explained the reason why this grievance failed to exhaust Henden's administrative remedies:

> Defendants state that Henden filed one grievance through Step III before he filed his complaint. That grievance – ICF-22-02-0152-28i – was rejected at each step. (ECF No. 23-5, PageID.102-106.) Henden stated at Step I that he was confined in an observation cell covered in feces for approximately 40 days. (*Id.*, PageID.105.) The Step I grievance was rejected for failing to attempt to resolve the issue with the staff involved. (*Id.*, PageID.106.) The rejection was upheld at Step II and

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

> Step III (*Id.*, PageID.102, 104.) The Supreme Court held in *Woodford*, 548 U.S. at 92-93, that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 90-95; 2386-2388. Proper exhaustion is a precondition to any suit challenging prison conditions. *Id.* Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. Here, Henden's grievance was rejected at each step for failing to follow the applicable MDOC grievance procedures.

(ECF No. 27 (R&R) *Order Approving and Adopting* (ECF No. 29).) In the opinion of the undersigned, this same reasoning applies to Defendant NP Lewis. Henden failed to properly exhaust a grievance naming NP Lewis and asserting that she denied him medical care in deliberate indifference to his serious medical needs.

Henden argues that he was somehow thwarted from filing a grievance against Defendant NP Lewis, that he feared retaliation for filing grievances, and that he was not given help to file a grievance.[4] (ECF No. 64, PageID.459-460.) Henden's excuse for failing to exhaust his administrative remedies is not well taken. Henden has failed to explain how he was thwarted, or how NP Lewis threatened to retaliate against him if he filed a grievance. Henden did file an untimely grievance six months after the incident, and he failed to name NP Lewis in that grievance. The MDOC properly rejected the grievance and Henden has failed to show otherwise. In the

[4] Soon after he filed grievance ICF-22-02-0152-28i, Henden filed an unrelated grievance ICF-2-05-0517-03d which was denied at each step on the merits. (ECF No. 61-4, PageID.412-416.) This subsequent grievance shows that Henden understood how to file a grievance.

opinion of the undersigned, NP Lewis is entitled to dismissal from this lawsuit due to Henden's failure to exhaust administrative remedies.

**IV. Eighth Amendment**

It appears that Henden alleges that NP Lewis failed to provide him with proper medical care. Although, that is not entirely clear from his complaint. Henden explains that after he was placed in an observation cell, NP Lewis "had to beg (RUM) L. Miller and the other c/o's who were there to give me a shower and a new gown. But . . . . no effect . . . . even after several requests that I needed treatment inmates are required to be provided after ending their hunger strike." (ECF No. 1, PageID.3-4.) Henden further alleges that on September 8, 2021, he was examined by NP Lewis but "was so dehydrated that they couldn't draw blood and when they did it was strain and were in pain." (*Id.*, PageID.5.) Finally, Henden says that he was "notified of kidney & liver suffering serious or permanent injury – Hepatitis." (*Id.*)

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *Phillips v. Roane Cnty.*, 534 F.3d 531, 539-40 (6th Cir. 2008). Where a prisoner challenges their

treatment as inadequate, a prisoner must show more than a serious medical need. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). To establish the objective component in a situation where a prisoner asserts that the care received was inadequate, a prisoner must prove grossly inadequate care which generally requires the introduction of medical evidence typically in the form of expert testimony. *Id.*

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

The subjective component was summarized in *Rhinehart*. There, the court of appeals stated the following:

> [T]he plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.

> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

First, Henden's complaint fails to allege that Defendant NP Lewis acted with deliberate indifference to a serious medical need. Henden alleges that NP Lewis failed to talk custody staff into allowing him to take a shower, have a new gown, or to allow her to examine him. (ECF No. 1, PageID.4.) Henden alleges that NP Lewis was present when it was difficult for medical staff to draw a blood sample from him. (*Id.*, PageID.5.) Henden alleges that he was told that his kidney and liver were suffering and that there was a possibility that he had hepatitis. (*Id.*) Henden fails to explain how NP Lewis was deliberately indifferent to a serious medical need.

Second, the medical records show that while Henden was in an observation cell from August 1 to September 9, 2021, he received medical care and treatment from health care staff. (ECF No. 61-2.) NP Lewis was not directly involved in Henden's medical care while he was on observation status. NP Lewis examined Henden only one time during this period, on September 8, 2021. (*Id.*, PageID.264-268.) NP Lewis noted that Henden was on a hunger strike because he wanted antidepressants. (*Id.*, PageID.264.) NP Lewis noted that Henden had "foul body odor and dried feces on his

skin." (*Id.*, PageID.265.)  "His entire cell was cover[e]d with dry feces."  (*Id.*, PageID.266.)  Henden received laboratory tests and was scheduled to be examined by a provider on September 13. (*Id.*, PageID.267-268.)    NP Lewis counseled Henden  on the "[e]ffects of hunger up to and including death.  Encouraged him to at least stay hydrated.  Discussed possibility of serious infection from feces smearing."  (Id., PageID.268.)  An administrative note made in the evening of September 8, 2021, indicates that Henden ended his hunger strike and had eaten dinner.  (*Id.*, PageID.263.)   By September 29, 2021, NP Lewis noted that Henden's kidney lab results had improved but "show liver damage possible from the hunger strike, or from infectious disease such as Hepatitis." (*Id.*, PageID.260.)  She indicated that she would repeat the lab tests next week to check further.  (*Id.*)   When a nurse visited Henden for a blood draw on October 4, 2021, he  questioned why it was necessary and stood at his cell window while masturbating.  (*Id.*, PageID.59.)  Henden was transferred to a new prison on October 6, 2021.  (*Id.*, PageID.254.)

Henden has presented no evidence which supports his claim that NP Lewis acted with deliberate indifference to his medical needs.  On the contrary, NP Lewis shows that she provided medical care and that other health care staff provided medical care to Henden while he was in the observation cell at AMF.  In the opinion of the undersigned, there exists no genuine issue of fact on Henden's Eighth Amendment claims.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant NP Lewis's motion for summary judgment and dismiss the complaint against her without prejudice due to Plaintiff's failure to exhaust his administrative remedies. Alternately, it is recommended that the Court grant the motion for summary judgment and dismiss the complaint with prejudice because no genuine issue of fact exists as to the Plaintiff's Eighth Amendment claims.

Dated: August 2, 2024

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).